Good morning, Your Honors. May it please the Court, Stephen Benton on behalf of the Appellant Petitioner Alejandro Garcia-Andrade. I'm here today to seek the Court's assistance in preventing the erosion of one of the fundamental rights afforded to individuals under our Constitution, and that is the right against self-incrimination under the Fifth Amendment. Before I get to the central and heart of this matter, I'd just like to walk us through how the Fifth Amendment was even implicated in these proceedings here. Number one, I'll speak to whether or not an alien even has a Fifth Amendment right in removal proceedings. It's conceded by the government and well-established that an alien does so. And two, directly quote the case of Rios-Barrios v. INL. Stephen-Well, there's no dispute about that. I mean, an alien can assert the Fifth Amendment right to remain silent, but there are consequences that can flow from that in a civil proceeding. Alejandro-Understood. And I agree that that is a central issue. Stephen-You can draw a negative inference from it. Alejandro-That's where I disagree, Your Honor. I believe that the case law that speaks to the ability for the immigration judge to draw a negative inference based upon the appellant's or the respondent's silence in the removal proceedings, I believe that that doesn't extend to cases where the silence deals with crimes for which that respondent may face future prosecution. If we look to the case law that the government has cited and where we are deriving the rule that the negative inferences may be drawn, and these cases are Solano, Godines, Alderete, Deris, and Velikomsky v. Todd, we can see that in each of those cases, what's going on there is that the alien wasn't afforded the entire Fifth Amendment right not to incriminate themselves based on the fact that what they were trying to not incriminate themselves with regard to was their removability and their actual, excuse me, their unlawful presence in the United States. Stephen-I don't quite understand your argument. Alejandro-Under the context of those cases, the negative inference is drawn with regard to the issue of lawful presence in the United States, whereas in this case a negative inference is drawn as to a crime which is punishable outside, in a criminal context, outside the context of the civil removal proceeding, and that is past drug use. So what you're saying is that the consequence of his implied admission is that he is admitting impliedly to a criminal act? Correct, Your Honor, whereas the implication in- I.J. instead went off on the notion that your client had failed to carry his burden of proof. It's my contention, Your Honor, that there was sufficient proof for my client to carry his burden of proof below with regard to the good moral character aspect, and I believe that's what the drug use would speak to specifically, and that is the fact that there were no additional convictions for drug use aside from the one that he admitted to. In addition to that, as part of the previously- Would you rather have the I.J. draw a negative inference, thereby affirmatively, in effect, finding that he had committed a crime, or would it be better if the I.J. had done what he did and simply say, well, I won't draw that inference, but I'm going to say you didn't carry your burden of proof? For purposes of my appeal, I would prefer that the negative inference had been drawn, because I believe that's unconstitutional and provides the legal grounds for appealability, or for a successful appeal, I should say. Counsel, I don't understand what happened in the underlying proceeding. Your client had been lawfully in the United States for an extended period of time, and the only conviction had been expunged from the record, but he voluntarily chose to testify. Did he not at that point understand that he was opening himself up to examination? He understood that he was opening himself up to examination, but the extent of the questioning, he still had the opportunity to not incriminate himself within the context of that testimony there. He had to bear his burden of proof, and in order to do that, he had to testify as to his continuous residence, his good moral character, and the lack of convictions. There seems to be a long period of time in which there's no record. We know the proceeding, in effect, stopped, and some discussion takes place. And what prevents us from determining that in that discussion, he weighed his options, including the fact that if he admits to drug use, then he's got a problem with ever returning to this country. If he remains silent, there's no evidence of his drug use, and he has children who will soon be adults, and he potentially can come back to the country. I mean, there seems to be a myriad of things that could have gone on there, and then he makes this voluntary choice not to testify. And I guess, as I understand your argument, you're saying he should have never been put in that dilemma. That's exactly what I'm saying, Your Honor. But he was put in that dilemma because the I.J. is the one that questioned him with regard to the drug use. Well, it would seem I've not attended a lot of these hearings, but when you've got one expunged conviction, it's not going to be unanticipated that the I.J. is going to ask about drug use. I agree, but requiring someone to answer that question in order for that person to bear their burden of proof on the issue of good moral character is a violation of the Fifth Amendment. I mean, it's one thing to say, you know, just, you know, a few occasions I had smoked marijuana. You know, how long ago did that happen? You know, a few years ago. I mean, that's so, you know, that's not a, I mean, I don't know how, unless he admits, you know, last year at five o'clock, you know, at my house with somebody present, I smoked marijuana. Any illicit drug use would be a violation of law and could potentially subject that person who incriminated himself to prosecution. How is the respondent to know at that time whether or not there would be any prosecution against him? He says, well, I can't remember when. You know, the last two years I've had smoked marijuana once or twice, you know. It's not his decision to make whether or not he'll be charged for that violation of the law. Let me ask you this. The one thing I noticed that was kind of odd is that there was not a series of questions that were asked and then the fifth asserted. Not every question would lead, you know, would be incriminating. I'm here specifically to address the negative inference implication of not answering the drug use questions. I'm not here to speak to the questioning in its totality, although I realize... Let me ask you, sir, is it your position that the IJ couldn't ask at all about other drug use? Not that the IJ couldn't ask, but that once the Fifth Amendment was asserted by the respondent, that there should not have been any negative inference drawn in relation to... And what's your best case for that? I realize the IJ didn't say here, I draw it, you know, you didn't answer the question, so I'm going to infer that there has been prior drug use and based on that, I'm exercising my discretion and I'm not going to grant you relief. I mean, that's not what he did, but I don't know why he couldn't do that. My best case, Your Honor, is the Kastigar v. United States case, which states that the Fifth Amendment can be asserted in any proceeding, civil or criminal, administrative or judicial, and it protects against any disclosures that the witness believes could be used in a criminal proceeding or could lead to evidence that might be so used. But that doesn't answer the consequences of doing so. What do you do with, for example, Ohio Board of Parole v. Woodard, the Supreme Court case on clemency? That's not a removal case. I'm not sure how to answer that question, Your Honor, but I can... You're not familiar with the case? My apologies, I am not. Okay, well... I do have other cases to back up my position. The Supreme Court said in that case that where he was refusing to participate in clemency proceedings because he feared he could be prosecuted for whatever he said and risk losing his chance for clemency, did not amount to compulsion sufficient to violate the privilege against self-incrimination because his participation was voluntary. Woodard argued that he would only receive one guaranteed clemency hearing and in the interview he may be forced to answer questions which would implicate him in criminal activity, or if he remained silent, his silence may be used against him. The court said unanimously he has the choice of providing information to the clemency authority at the risk of damaging his case for clemency or post-conviction relief or remaining silent. So this is a discretionary proceeding, a cancellation of removal. I understand. So I'm not sure I... I understand what you're arguing that somehow because what he would be admitting to by inference, construed to be admitting to, is a criminal act. But you're saying, I mean, that triggers the Fifth Amendment invocation, presumably. That's what he's worried about. But he has the right to do that, but it doesn't mean that the clemency board in that case or the immigration judge assessing whether or not to grant a cancellation of removal can't draw a negative inference from it and decide either that he hasn't met his burden of proof, that he's free of crimes of moral turpitude or prior conviction or prior acts, or draws a negative inference and finds affirmatively that he does. Again, I don't think the LJ decided to go that latter route. He seemed to put it on the burden of proof argument. But I'm not following why or what case you have that says that even though he has a right to exercise, nobody's...well, I don't think anybody's disputing that at this point. He can exercise his Fifth Amendment right to remain silent because he's worried about the collateral consequences, but the civil authority is not precluded from denying discretionary relief. They're not convicting him of anything. They're simply saying, you haven't carried the burden you have to make for us to grant you cancellation of removal, which is a discretionary act. I understand with regard to the burden of proof issue, but what I believe is unclear is whether or not the negative inferences were drawn by the IJ. Let's assume they were. They were drawn? Let's assume there were negative inferences drawn. It says that the IJ can't do that. I believe the case law that speaks specifically to the removal proceedings... That's why I came back to Woodard. I understand. And I would just draw a distinction between a clemency and the removal proceeding hearing. And there are specific case laws speaking to under what circumstances the negative inference may be drawn in the removal proceeding. Let me ask you this. So as I understand what the IJ did, he said, failed to meet your burden of proof to show eligibility for cancellation of removal, right? Yes. Okay. So he doesn't zero in on a particular element. He just said, failed to meet your burden of proof. The record seems to suggest that he probably met his burden showing continuous presence. As to a person of good moral character, what evidence as it exists shows that he met his burden of good moral character? I believe that in proving that one has good moral character, a way to do that is to prove I do not have bad moral character, and a way to prove I don't have bad moral character is to show I have not been convicted of any crimes since the initial conviction, which I believe a waiver could be had with regard to. In addition to that, there was the completion of the probationary PC-1000 course, which essentially shows that that person has rehabilitated with regard to the charges they were convicted for previously. So I believe that those items of evidence stand as evidence of good moral character. He wasn't bad, so he was good. And he's not been convicted of an offense under 1182, 1227, 1227-83? There is evidence. There is evidence. That's why I believe that the implication is that the negative inference from not testifying with regard to the prior drug use is what tipped the scales in the IJ's mind. Well, why isn't that sufficient then? I believe it was unconstitutional to... Okay, we're back to where we were. So you don't think that this was a discretionary call? I agree it was a discretionary call, but I believe some of the factors applied in utilizing the discretion were unwanted. So you think in the end, even though he talks about eligibility, in the end he just made a discretionary call here, bottom line. On this record, you're not... I'm not exercising my discretion to grant you cancellation of removal. Well, that's absolutely what happened, but factors that the judge used, I believe, were improper. I see. Okay. Well, if we were to conclude that it was just a discretionary call, then do we have jurisdiction? I believe you do. I believe it's abuse of discretion because of the use of the negative inferences. Okay. Thank you. Thank you. Okay. Please, the Court. Donald Kubian for respondent. Your Honors, there's one factual point that has not come forth that provides some insight, I believe, into this case, and that is that the conviction in question here occurred in 1997, and the evidentiary hearing and the proceedings occurred in October of 2005. And if the petitioner was electing to remain silent about the use of a controlled substance in regard only to the time of his conviction, that would have been well beyond the statute for any criminal prosecution, which raises an interesting point that has not been focused on. If he was asserting his right, it must have been in regard to more recent activity for which he could have been prosecuted. Now, that troubles me. If the rule is that in a cancellation of removal hearing that the immigration judge has free reign basically to engage in some or the government asking the questions, has free reign to have this petitioner under oath and then say, all right, have you engaged in any activity involving controlled substances over the last 10 years? And he may have used, recently used cocaine, let us say. And he could be prosecuted for at least possession of that. No drug history in the record of this petitioner. This is hypothetical. So he has to answer that for fear of a negative inference being drawn that he has engaged in some kind of potentially criminal activity with regard to controlled substances. Next, the IJ moves on. So have you been involved in anything having to do with obscene materials, possession of obscene or pornographic materials? Have you done anything with regard to your financial affairs? It goes down a laundry list of categories where he isn't sure whether anything he's done. And he's under oath, so he's worried about perjury. And he invokes what the counsel present would have said, I don't know, but these may be risky areas. So now essentially what happens in this cancellation of removal is that a petitioner is put in a position of having to fess up to potentially criminal behavior, which may be quite marginal, but he's not sure. Shoplifting, who knows what it might be. Driving under the influence, a variety of things. Is there any requirement that the questioning area, if negative inferences can be drawn from invocation of the Fifth Amendment, any limitations on whether the government, the IJ, has to have some reason to ask that line of questioning? I think that brings us to AUSC1101F, Your Honor. Both cancellation under B for a nonresident, that's here, and voluntary departure require that the petitioner show his good moral character. And at 1101F, the statute gives the fact finder wide latitude in pursuing that question. It's interesting that- I know, that's the predicate for my concern. The 1101A13C5, Roman 5, provides that the only permanent resident returning who must be inspected and admitted, and there's a fine distinction here between entering by a returning resident and being inspected. A returning resident generally is precluded from being admitted. They don't have to be admitted. They just enter upon inspection. The one exception to that is a resident who, let me, if I may find that so that I don't err in quoting it. The one resident who must be inspected and admitted is a resident who has been granted cancellation under B, which would be the case in this case, if he were granted that. So the IJ had two good bases for pursuing this inquiry. One is whether or not it makes any sense to give this man cancellation when every time he comes back- I'm talking about generally. All right, but- My question was, as I said, hypothetical. I'm trying to understand, assuming that the fundamental rule that the government advocates here is that you may invoke the Fifth Amendment in a civil removal or cancellation proceeding, but the IJ is therefore able to draw a negative inference of nonconforming criminal misconduct from your refusal to answer. So the IJ can ask about anything that would come with under the heading of good moral character. Suppose the question is, you are under oath, sir. Have you done anything over the last 15 years that would constitute bad moral character? You're under oath, sir. I suppose he could have done it that way. Well, let's suppose he does. And then he's supposed to search his mind and think of all the bad things he has done that possibly might give rise to criminal liability. Or does it have to be more focused? The 1101F talks about being a habitual drunkard. There's the controlled substance, of course, illegal gambling. Does there have to be some nexus to what this is? In this case, there was some evidence of drug use, drug-related issues. So pursuing drug issues, maybe in this case, on that line of questioning doesn't present the concerns I have. I'm just trying to understand what the limits are. I don't know of any limits, Your Honor. And I would answer that F confers very broad discretion in that regard. I'm asking whether there are limits to it. Does F inherently provide some limits, too? Well, I think it does because it refers, for example, it mentions certain things, you know, that were never pursued here, nor was there any reason to pursue them. The only time I think you really see this laundry list pursued is when, a type of case Your Honor probably never sees is when someone is seeking adjustment of status and you have a very careful immigration judge who goes down all the reasons why you might not be admissible, every single one of them, which is proper in that context. Here he didn't do that, nor did he need to do that. He did focus on what might be a problem. And good moral character under F is a statutory requisite for the relief that was being sought. And I think that's where I'm going with this. 212A-2 comes into play both under good moral character and under admission for a returning resident. They all interrelate in some fashion. Can I finish with Judge Fischer's question? I hope I have, but I don't. That's fine. Go ahead. Yes, Your Honor. Let me ask you, there's something that kind of bothered me about this, and I tried to ask counsel a moment ago. Yes. Do you understand, well, as I understand our case law, for example, when the I.J. disqualifies somebody for cancellation removal on the basis of one of the per se categories, we have jurisdiction to determine whether or not that is a proper determination. Yes. Okay. But the predicates were satisfied for that. Correct. Now, our case law also seems to suggest that when you get down to the catch-all factor, where it's a discretionary call about moral character, that we don't have discretion to review that. We don't have the authority to review that discretionary decision. Yes, Your Honor. Okay. What took place here? Did the I.J. make a discretionary determination that this fellow didn't have good moral character? Or did he simply say he hasn't presented enough evidence to show that he meets these basic eligibility criteria? And is there a difference if he did one or the other? He did both. He did both. Okay. How do I know that he did both? Well, on page 50 of the record, he, in the final portion of the record. Hold on, hold on. Page 50. Hold on. Page 50, Your Honor. Okay, I got it. All right. The paragraph immediately before order, he says he draws his conclusion, and he says that since he failed to testify and carry his burden, I'm denying it for that reason, and. . . Showing that he is both statutorily. . . Ineligible. Ineligible, or hasn't met the burden to show that he's statutorily eligible. And deserving as a matter of discretion. Discretion, yes. So does that, deserving, that means that he should, that he's exercising his discretion, or that he doesn't even have to get to discretion? Well, it says this Court concludes that he has failed to sustain his burden and deserving as a matter of discretion. Okay, so you would read that as that he's exercising his discretion. Yes. And he finds that he's not. . . Worthy. Worthy of his discretion. Yes. Okay. So if that's what he did, do we have jurisdiction to review this? No. But it's inseparable, is it not, from the statutory ineligibility. So, that's what gets us here, I suppose. I wasn't quite sure what this, really, what the I.J. did. Well. . . I mean, it would have been a lot cleaner if he just said, you know. . . Yes, it would. You can assert your Fifth Amendment right, that's fine and dandy, but I'm going to draw a negative inference that at some time after this incident, you know, you engaged in the use of drugs. Yes. Controlled substances, and I therefore find you, you know, exercise my discretion and you're not eligible for cancellation. Well, it certainly would have. End of story. Yes, but it certainly would have, and we have language that is not as clear as it could have been. Okay, but you believe that this can be read as he was exercising discretion. And I gather counsel thinks the same way, because that's what counsel told me. Yes. Well, I mean, it can be, and we know that he did render a denial on eligibility itself. Let me ask you another thing. You know, with respect to the criteria about showing that he had not been convicted of any of those enumerated offenses, you know, if you look at the evidence that was submitted, the only thing we really know is he submits that, I think it was 185 of the administrative record, a certificate from the San Diego Superior Court. Yes. He has no criminal record. Right. Well, you know, what about Los Angeles County or Riverside County or San Bernardino County? Well, that's a very good point, Your Honor. But good moral character and admissibility are not limited merely by conviction. Yes, I understand that. There's the catch-all phrase at the end of the list in 1101F. F. The catch-all about, you know, failure to meet any of these others doesn't preclude. What does that say? Well, in this case, we don't even have to get to that. No, I know. But it's very broad. Yes, it is. Because F does specifically mention 212A, 2A and B. And that's what we have here. Thank you, Your Honor. Thank you. Thank you. Counsel? Just to touch again on the matter of whether or not the burden was borne or whether or not this was just an application of the IJ's discretion, I believe it's clear from the record that was just stated by counsel and you, Your Honor, that the judge determined that the burden was not borne, thereby putting us within your discretion to decide on the appeal. And, again, I contend that in the factors utilized by the IJ, it was improperly, the IJ improperly used the negative inference drawn from. . . Well, he also said, as counsel pointed out, he also said, and deserving of discretion. Said right there, failed to sustain burden. And? But I don't believe that. . . Did he just toss that in there to, you know, just that willy-nilly? Well, since it's unclear. . . Does it mean something? I believe it's unclear that it speaks specifically to the discretion with regard to the good moral character component, especially in light of the fact that it's conjunctive with did not bear the burden. Okay. Okay. Thank you. Thank you, counsel. The case argument is submitted. We'll take a short seven-minute recess.
judges: Fisher, Paez, Robart